IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYSEAN D. BARBER, | |
| Plaintiff, | **8:24CV426** |
| vs. | |
| U.S. BANK, CREDIT ONE BANK, and ELAN FINANCIAL SERVICES, | **MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION** |
| Defendants. | |

In this case, *pro se* plaintiff RaySean Barber asserts claims against defendants identified as U.S. Bank, Credit One Bank, and Elan Financial Services arising from their handling of payments Barber made from his U.S. Bank account to Credit One Bank and Elan Financial Services that were reversed causing him to incur various fees. Filing 1. This case is now before the Court on the following motions: (1) the December 19, 2024, Motion to Compel Arbitration by Credit One Bank, N.A., (Credit One),[1] Filing 13; and (2) the January 2, 2025, Motion to Compel Arbitration by defendants U.S. Bank National Association (U.S. Bank) and U.S. Bank d/b/a Elan Financial Services (Elan), (collectively, U.S. Bank Defendants),[2] Filing 19. For the reasons stated below, the Motions to Compel Arbitration are granted.

---

[1] Credit One asserts that it was improperly named in Barber's Complaint as "Credit One Bank," but that it is properly identified as "Credit One Bank, N.A." Filing 13 at 1. Nevertheless, Credit One then identifies itself in its Motion to Compel Arbitration as "Credit One," Filing 13 at 1, and the Court will do the same.

[2] Defendant U.S. Bank asserts that it was improperly named in Barber's Complaint as "U.S. Bank," but that it is properly identified as "U.S. Bank National Association," but it then identifies itself simply as "U.S. Bank." Filing 19 at 1 & n.1. U.S. Bank asserts further that "upon information and belief, plaintiff is attempting to sue U.S. Bank in its capacity of doing business as Elan Financial Services." Filing 19 at 1 n.1. U.S. Bank then identifies U.S. Bank and Elan Financial Services collectively as "Defendant." Filing 19 at 1. The Court will generally refer to "U.S. Bank" and "Elan" as though they are separate defendants, consistent with the allegations in Barber's Complaint and because the two entities assert separate arbitration agreements are controlling as to each of them. However, when referring to the second Motion to Compel Arbitration or arguments made in support of it, the Court will identify U.S. Bank and Elan collectively as the "U.S. Bank Defendants."

## I. INTRODUCTION

### A. Preliminary Matters

The Court notes that none of the defendants have filed answers to Barber's Complaint before filing their Motions to Compel Arbitration. This procedural posture raises questions that none of the parties addressed about what Federal Rule of Civil Procedure is applicable and hence what record the Court can consider when ruling on the Motions.

The Eighth Circuit Court of Appeals has addressed the question:

> Upon careful review of the relevant authority, we agree ... that [a defendant's pre-answer] motion [to compel arbitration] is properly analyzed under either Rule 12(b)(6) or Rule 56. To be sure, the motion does not sit squarely on all fours with either rule. We are nonetheless satisfied that, unlike the cases interpreting Rules 12(b)(1) or (b)(3), the legal authority does not forbid parties from using Rules 12(b)(6) or 56 to enforce an arbitration agreement. To the contrary, our sister circuits regularly employ Rules 12(b)(6) and 56 when deciding whether to compel arbitration. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013); *Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 817, 821 (7th Cir. 2006); *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing cases from the Second, Third, and Fifth Circuits and stating that "courts that have addressed the question have analogized the ... evidentiary standard a party seeking to avoid compelled arbitration must meet ... to that required of a party opposing summary judgment").
>
> We decline to press the matter by deciding between Rule 12(b)(6) and 56, because summary judgment standards apply either way. In litigating [defendant's] motion both parties submitted matters outside the pleadings, which the district court considered when granting the motion. Thus, even if the motion is construed under Rule 12(b)(6), it must ultimately "be treated as one for summary judgment under Rule 56." *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Evans v. McDonnell Aircraft Corp.*, 395 F.2d 359, 361 (8th Cir. 1968) ("Since both parties filed affidavits and exhibits in support of their respective positions, which were not excluded by the District Court, the motion to dismiss should properly have been treated as one for summary judgment.").

*City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017).

In this case—as in *City of Benkelman*—Credit One, the U.S. Bank Defendants, and Barber each submitted evidence in support of or opposition to the Motions to Compel

Arbitration. *See id.*; *see also* Filing 14 (Credit One's Index); Filing 21 (U.S. Bank Defendants' Index); Filing 17 at 7–19 (Barber's Affidavit in support of Brief in Opposition to Defendant Credit One Bank's Motion to Compel Arbitration). Consequently, the Court will treat the Motions to Compel Arbitration as motions for summary judgment under Rule 56. *Id.*[3]

The Court notes that what claims are asserted and whether they are covered by the arbitration agreements depend on how the Court views Barber's *pro se* Complaint, even if summary judgment treatment is otherwise appropriate. Consequently, the Court notes that "[a] pro se complaint must be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and 'pro se litigants are held to a lesser pleading standard than other parties[,]' *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004); *see also Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (explaining the liberal construction given *pro se* pleadings). Even so, "[t]he liberal construction afforded a pro se pleading is limited by reasonableness: defendants must be given fair notice of the claims so that they may make a meaningful response to the pleadings." *Nelson v. Farm Credit Servs.*, 19 F.3d 1437, 1994 WL 87164, at *1 (8th Cir. 1994) (table op.) (citing *Miles v. ERTL Co.*, 722 F.2d 434, 434-35 (8th Cir. 1983) (per curiam)). Therefore, the Court will not construe Barber's Complaint to contain claims that cannot reasonably be found in that pleading in deciding what claims are asserted and whether they are arbitrable.

---

[3] The Court acknowledges that Credit One's Motion sought only a stay of the action pending arbitration rather than dismissal. Filing 18 at 3; *see also Est. of Walahoski by & through Walahoski v. Evangelical Lutheran Good Samaritan Soc'y*, No. 4:20-CV-3026, 2020 WL 8970617, at *1 (D. Neb. Mar. 24, 2020) (in a ruling to determine whether a response to a motion to compel arbitration was untimely, distinguishing *City of Benkelman* on the ground that what was at issue was a motion to dismiss premised on an arbitration clause, but the motion to compel arbitration in the case before the Court involved only a request to stay pending arbitration, explaining, "It seems self-evident that a court can't stay a case and dismiss it at the same time."). However, in Barber's case, the U.S. Bank Defendants seek dismissal premised on an arbitration clause and only request a stay "in the alternative." Filing 20 at 1. In these circumstances, the Court concludes that Rule 12(b)(6)/Rule 56 standards are applicable where dismissal of the case pending arbitration has been requested in one of the Motions to Compel Arbitration and that standard is—if anything—more protective of the non-moving party than an unrestricted consideration of the record.

With these preliminary matters resolved, the Court turns to a summary of the relevant factual background to the case.

## B. Factual Background

Because the Motions to Compel Arbitration must be treated as motions under summary judgment standards, the Court must view the facts in the light most favorable to Barber. *See, e.g., Bnomo v. Boeing Co.*, 63 F.4th 736, 742 (8th Cir. 2023). The Court finds that the nucleus of relevant facts is relatively small.

Barber alleges that he obtained a savings and checking account with U.S. Bank on or about July 26, 2024, and that he signed up for overdraft allowance. Filing 1 at 2 (¶¶ 1–2). He alleges that on July 29, 2024, he made a payment on his Elan credit card, but "[a]fter having allowed the transaction to go through, U.S. Bank apparently took the money back from Elan [F]inancial [S]ervices on July 30, 2024," and he was charged a reversed payment fee by Elan. Filing 1 at 2–3 (¶¶ 10, 12). Barber alleges that thereafter he made various payments believing that he had funds available and overdraft protection, but the payments were taken back by U.S. Bank or U.S. Bank improperly charged overdraft fees. Filing 1 at 3–7 (¶¶ 13–56).

Barber alleges that he is a current credit card consumer with Credit One. Filing 1 at 8 (¶ 57). He alleges that on August 24, 2024, he received a notice from Credit One that he had an account balance of $440.00, despite his having a credit limit of $300, resulting from return of payments for insufficient funds. Filing 1 at 7 (¶¶ 58–59). He alleges additional facts about his transaction history with Credit One, Filing 1 at 7–8 (¶¶ 60–68), but the essence of his allegations is that "Credit One Bank assessed false charges to [his] credit card account." Filing 1 at 8 (¶ 69).

Barber alleges that he is also a credit card holder with Elan. Filing 1 at 8 (¶ 70). He alleges that because U.S. Bank reversed payments he has incurred reversal fees from Elan. Filing 1 at 8–9 (¶¶ 71–77).

The record reflects—and Barber does not dispute—that the documents governing his accounts with U.S. Bank, Credit One, and Elan include arbitration clauses that were activated when he used or activated his accounts or failed to cancel the accounts within thirty days after opening them. *See* Filing 17 at 10, 14–16 (Ex. B to Opposition, Credit One Card Agreement arbitration provisions); Filing 25-1 at 12, 16–18; Filing 21-2 at 19–20 (U.S. Bank Deposit Account Agreement arbitration agreement); Filing 21-3 at 3, 6–7 (Elan card agreement arbitration provisions). The Court finds that the most pertinent parts of the arbitration agreements for present purposes are the "covered claims" provisions.

The Credit One Card Agreement provides as follows:

**Covered Claims:** Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest, charges, or fees assessed on your Account; any service(s) or programs related to your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account. Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account. Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort statute, regulation, common law, or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your Account is closed, you pay us in full any outstanding debt you owe, or you file for bankruptcy. Also, controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this agreement to arbitrate in the broadest way the law will allow it to be enforced.

Filing 17 at 14 (emphasis in the original); Filing 25-1 at 6 (same).

The U.S. Bank Deposit Agreement "covered claims" provision is similar:

**Claims Covered By Arbitration:** Claims subject to our agreement to arbitrate shall include all of the following: (1) Claims related to or arising out of this account Agreement, or any prior or later versions of this account Agreement as well as any changes to the terms of this account Agreement; (2) Claims related to or arising out of any aspect of any relationship between us that is governed by this

account Agreement, whether based in contract, tort, statute, regulation, or any other legal theory; (3) Claims related to your use of any of the digital services we make available to you through our website, online banking platforms, and mobile apps; and (4) Claims that relate to the formation, construction, scope, applicability, or enforceability of this arbitration provision. Claims include Claims that arose before we entered into this account Agreement (such as Claims related to advertising) and after termination of this account Agreement.

Filing 21-2 at 19 (emphasis in the original). The Elan card agreement "covered claims" provision is nearly identical to clauses (1), (2), (4), and the final unnumbered sentence of the U.S. Bank Deposit Agreement "covered claims" provision:

**Claims Covered By Arbitration**

Claims subject to our agreement to arbitrate shall include all of the following: (1) Claims related to or arising out of this Agreement, or any prior or later versions of this Agreement as well as any changes to the terms of this Agreement; (2) Claims related to or arising out of any aspect of any relationship between us that is governed by this Agreement, whether based in contract, tort, statute, regulation, or any other legal theory; and (3) Claims that relate to the construction, scope, applicability, or enforceability of this arbitration provision. Claims include Claims that arose before we entered into this Agreement (such as Claims related to advertising) and after termination of this Agreement.

Filing 21-3 at 6 (emphasis in the original).

### C.  Procedural Background

In a Complaint filed November 4, 2024, Barber states, "RaySean Barber her[e]by sues U.S. Bank, Elan Financial Services, and Credit One Bank pursuant to the Consumer Protection Credit Act [sic] under 15 U.S.C. §1693h, and also for breach of contract under Neb. Rev. Stat. §25-302, and Conversion." Filing 1 at 1.[4] Although this opening paragraph might seem to

---

[4] The reference to a claim "for breach of contract under Neb. Rev. Stat. § 25-302" is confusing. The statutory provision identified does not authorize a claim for breach of contract. Instead, it provides as follows: "The assignee of a thing in action may maintain an action thereon in the assignee's own name and behalf, without the name of the assignor." Neb. Rev. Stat. § 25-302. There is no reference to any assignment of a thing in action in Barber's Complaint. *See generally* Filing 1.

suggest otherwise, only one of three causes of action later set out in Barber's Complaint is against all three defendants.

Barber's first cause of action is for breach of contract against U.S. Bank only. Filing 1 at 9 (¶ 78). It alleges the following:

> 78.    By purportedly taking the payment of $1,054.69 back from Elan that Mr. Barber paid on July 29, 2024, after having already completed the payment to Elan the U.S. Bank breached the agreement made between it and Mr. Barber. Mr. Barber paid for overdraft allowance, which should have been charged by the Bank for the transaction in accordance with the contract signed by both parties.

Filing 1 at 9 (¶ 78).

Barber's second cause of action is for conversion against all three defendants. Filing 1 at 9–10 (¶¶ 79–82). It alleges the following:

> 79.    U.S. Bank, along with Credit One Bank, as well as Elan Financial Services, stole Mr. Barber's funds by reversing his payments due to insufficient funds where there were sufficient funds in Mr. Barber's account to make said payments. This allowed Defendants to charge Mr. Barber late fees and place Mr. Baber in further debt that he would have to pay in order to use credit or debit.

> 80.    Credit One Bank assessed fees on Mr. Barber that were not related to any payments actually owed or purchases made by Mr. Barber.

> 81.    U.S. Bank caused Mr. Barber's account to enter a negative balance by causing his transaction history to look as though he was making payments owed to merchants that were previously paid although actually just taking the money from Mr. Barber's account.

> 82.    Elan financial Services reversed payments after having received them from the U.S. Bank, but failed to actually return the money that it reversed. This also caused Mr. Barber to be assessed late fees by Elan.

Filing 1 at 9–10 (¶¶ 79–81).

Barber's third cause of action is identified as "Consumer Protection Violation," Filing 1 at 10, and is presumably based on the federal "Consumer [Credit Protection] Act, 15 U.S.C.

7

§ 1693h" identified in the first unnumbered paragraph of Barber's Complaint, Filing 1 at 1. It is not against all three defendants but only against U.S. Bank as it alleges the following:

> 83.    U.S. Bank failed to make instructed payments in a timely manner or otherwise as required by the agreement signed by Mr. Barber to do business with this bank. This caused Mr. Barber to be assessed fees and interests, and in turn caused Mr. Barber's credit to suffer a loss of points.

Filing 1 at 10 (¶ 83).

Barber seeks injunctive relief "enjoin[ing] the continuation of the misconduct alleged above by Defendants." Filing 1 at 11 (¶ 84). He also seeks actual damages in itemized and specified amounts as to each defendant. Filing 1 at 11–12 (¶¶ 85–88). He also seeks non-economic damages in differing amounts from each defendant for "unnecessary hardships as a result of th[eir] misconduct, resulting in mental, emotional, and financial distress." Filing 1 at 11 (¶ 89). Finally, Barber alleges, "The conduct of Defendants was done with intent to cause a [sic] Mr. Barber's credit to fall, to cause a negative balance in Mr. Barber's debit accounts, and to cause Mr. Barber to have no money available in his credit card accounts." Filing 1 at 11 (¶ 90). Consequently, he seeks punitive damages in the amount of $220,000,000 against each defendant. Filing 1 at 11 (¶ 90).

Credit One and the U.S. Bank Defendants filed the Motions to Compel Arbitration now before the Court with supporting indices of evidence on December 19, 2024, and January 2, 2025, respectively. Filing 13; Filing 19. Barber filed his Brief in Opposition to Defendant Credit One Bank's Motion to Compel Arbitration with an affidavit and document attached on December 23, 2024, Filing 17, and Credit One filed its Reply on December 30, 2024, Filing 18. Barber filed his Brief in Opposition to the U.S. Bank Defendants' Motion to Compel Arbitration on January 6, 2025, Filing 22, and the U.S. Bank Defendants filed their Reply on January 13, 2025, Filing 23. No party requested oral argument on the Motions to Compel Arbitration, and the

Court does not consider oral argument to be necessary. *See* NECivR 7.1(e) (setting out how and when to request oral argument and stating, "In general the court does not allow oral argument or evidentiary hearings on motions.").

## II.  LEGAL ANALYSIS

### A.  The Parties' Arguments on the Dispositive Issues

In its Reply, Credit One argues in part, "Mr. Barber concedes that he agreed to the arbitration provision within the Card Agreement." Filing 18 at 3 (citing Filing 17 at 1, 4). Credit One also argues, "There is no dispute that all of [Barber's] claims against Credit One arise from or relate to his account with Credit One." Filing 18 at 3 (citing Filing 17 at 1–2, 4, and Filing 1 at 7–8 (¶¶ 57–69), 9–10 (¶ 79–82)). Credit One then asserts, "Nothing more is required. [Barber's] claims against Credit One are subject to arbitration." Filing 18 at 3. The U.S. Bank Defendants likewise argue, "Plaintiff admits he agreed to arbitrate his claims" and that "issues relating to scope, applicability, and enforceability are left to the arbitrator." Filing 23 at 1. Barber's Opposition to both Motions to Compel Arbitration states that "despite the agreement made between [the pertinent defendant(s)] and Plaintiff, the nature of this action Warrants proceedings in this Court without Arbitration." Filing 17 at 1 (capitalizations in the original); Filing 22 at 1 (capitalizations in the original). Thus, while the defendants are correct that Barber concedes the existence of arbitration agreements, Barber disputes whether his claims are covered by those arbitration agreements.

Credit One argues in its Reply that Barber asserts "a single argument in response to [Credit One's] Motion to Compel Arbitration: his allegations against defendants are so intertwined that arbitration would be improper." Filing 18 (citing Filing 17 at 1). The Court finds that Credit One has mischaracterized Barber's argument. Barber's Opposition does not use the word "intertwined" anywhere. *See generally* Filing 17. Rather, on the page Credit One cited,

Barber argues that his Complaint "alleg[es] that Credit One Bank, as well as U.S. Bank and Elan Financial Services all worked together to make sure that Mr. Barber did not have sufficient funds on his account to maintain his credit and comfortable lifestyle." Filing 17 at 1 (citing Filing 1 at (¶ 64)). However, the Court finds that Barber's characterization of his claim is in turn a mischaracterization because he nowhere alleges that the defendants "worked together" for any purpose. *See generally* Filing 1.

The U.S. Bank Defendants more accurately characterize Barber's "sole argument" to be "that the applicable arbitration agreements between Plaintiff and U.S. Bank did not encompass Defendant Credit One Bank." Filing 23 at 2 (citing Filing 22 at 5–6). Barber does in fact argue that the cardmember agreement between Barber and Credit One related to arbitration only of claims between Barber and Credit One and no other parties. *See* Filing 17 at 2. In his Opposition to Credit One's Motion, Barber argues further:

> This case involved allegations by Plaintiff concerning a concerted effort by U.S. Bank and Credit One (as well as Elan Financial Services) to deprive Plaintiff of funds for the purpose of causing financial hardship. Thus, because the agreement does not include U.S. Bank, Plaintiff's claims are therefore not covered by the arbitration clause.

Filing 17 at 4. He makes a nearly identical argument in his Opposition to the U.S. Bank Defendants' Motion. Filing 22 at 6.[5] Allegations of "concerted effort" are also variously formulated in Barber's briefs as "conspiracy," Filing 17 at 2; Filing 22 at 5, and "acting in

---

[5] Specifically, Barber argues as follows in Opposition to the U.S. Bank Defendants' Motion:

> This case involved allegations by Plaintiff concerning a concerted effort by Defendants and Credit One to deprive Plaintiff of funds for the purpose of causing financial hardship. Thus, because the agreement does not include Credit One Bank, Plaintiffs claims are therefore not covered by the arbitration clause, even where the contract can be construed as including a provision of arbitrability.

Filing 22 at 6.

tandem," Filing 22 at 5. The Court will consider below whether Barber has actually alleged "concerted effort" by the defendants.

To the extent that Credit One replies to Barber's arguments to avoid arbitration, Credit One asserts the following:

> In *Contracting Northwest [v. City of Fredericksburg, Iowa]*, the Eighth Circuit Court of Appeals affirmed the district court's order compelling arbitration of certain claims between plaintiff and one of several defendants. [713 F.2d 382,] 387 [(8th Cir. 1983)]. The Court further affirmed that plaintiff's claims against the remaining defendants, which were not subject to an arbitration agreement, should be stayed pending the outcome of arbitration. *Id.* (explaining that Section 3 of the FAA "is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act.").

Filing 18 at 2. The U.S. Bank Defendants respond to Barber's "concerted efforts" and "acting in tandem" argument by asserting that allegations of concerted efforts "could prompt enforcement by a nonsignatory," although U.S. Bank Defendants argue that the Court need not rely on that ground to compel arbitration. Filing 23 at 1, 2–3.

Finally, Barber argues that all defendants are "jointly liable" for the conduct alleged in the Complaint, so that "separating the Defendants by ordering that the parties go through Arbitration proceedings first would infringe upon Plaintiff's right to obtain a judgment against the Defendants jointly." Filing 17 at 4; Filing 22 at 6–7. Unlike Credit One, the U.S. Bank Defendants respond to Barber's "joint liability" argument. Filing 23 at 2. Specifically the U.S. Bank Defendants assert,

> Plaintiff provides zero authority for the proposition that an allegation of joint liability should defeat a motion to compel an arbitration agreement. *See* Dkt. 22, Response, at 6. The cases cited by Plaintiff, *McDermott Inc.*, *Lackman*, *Gergen*, and *Kudlacek*, had nothing to do with arbitration provisions. *See id.*

Filing 23 at 2.

With the pertinent arguments in mind, the Court turns to a summary of requirements to compel arbitration.

## B. Requirements to Compel Arbitration

The Eighth Circuit Court of Appeals recently explained,

> Since arbitration is a contractual issue, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), entities need only arbitrate disputes "to the extent an agreement between [them] says so." *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). When a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate, and, if so, then what their arbitration agreement covered. *Id.* If the record shows a "material issue of fact on whether the parties had an agreement to arbitrate," the issue must be remanded for trial. *Id.* (internal citation omitted); *see* 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022).

*BSI Grp. LLC v. EZBanc Corp*, 122 F.4th 712, 715 (8th Cir. 2024); *JES Farms P'ship v. Indigo Ag Inc.*, 116 F.4th 733, 736 (8th Cir. 2024) ("To decide the question of arbitrability, we must determine whether a valid arbitration agreement exists between the parties and, if so, whether the subject matter of the dispute falls within the scope of the arbitration clause." (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018))). As the Court concluded just above, only the question of whether the claims at issue are covered by or within the scope of the arbitration agreements is at issue here, where Barber has conceded that there are agreements to arbitrate. *Id.*

The second requirement at issue here is a matter of contract interpretation. *See, e.g., JES Farms*, 116 F.4th at 736. A reference to "any dispute" indicates a "broad arbitration clause" that would encompass a wide variety of claims. *Id.* Furthermore,

> [C]ontract interpretation allows for the possibility that parties will use a "belt and suspenders" approach to emphasize the breadth of a particular provision. *See Leonard v. Exec. Risk Indem., Inc. (In re SRC Holding Corp.)*, 545 F.3d 661, 670 (8th Cir. 2008). Where the most natural reading of the text suggests a duplicative emphasis on capaciousness, we do not infer an intent of the parties to narrow the

clause. *See Brazil v. Auto-Owners Ins. Co.*, 3 F.4th 1040, 1043-44 (8th Cir. 2021); *cf. United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017).

*JES Farms*, 116 F.4th at 737. Furthermore,

> [I]f doubts exist as to the arbitrability of an issue, the Federal Arbitration Act requires the disputes to be resolved in favor of arbitration. *Triplet [v. Menard, Inc.]*, 42 F.4th [868,] 870 [(8th Cir. 2022)]. "Our task is to look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008).

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1100 (8th Cir. 2023). To put it another way, the Court must determine whether the claims asserted "touch matters covered by the . . . Arbitration Agreements" in light of any limiting language, such as language requiring that the "dispute arise under or relate in any way to the" contract in which the arbitration provision is found. *Anderson v. Hansen*, 47 F.4th 711, 718 (8th Cir. 2022) (cleaned up).

### C.  The Arbitration Agreements Cover Barber's Claims

*1.    Barber's Assertion that His Claims Are for Conspiracy or Concerted Action Do Not Bar Arbitration*

Barber's first argument that his claims are not covered by the arbitration agreements is that he has alleged "concerted action," "conspiracy," or "acting in tandem," but the arbitration agreements are only for claims between him and each respective defendant. Filing 17 at 2, 4; Filing 22 at 5–6. More specifically, Barber points out that the arbitration agreement in Credit One's case "provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION," then defines "we" or "us" as "Credit One Bank, N.A., the issuer of your Card" and defines "you" and "your" to refer to each person with an account. Filing 17 at 4 (quoting Filing 17 at 10, 14). Barber asserts,

> [B]eing a reasonable person of ordinary intelligence, Plaintiff signed this agreement with understanding that any actionable claim could only be brought to arbitration that involved only Credit One, Visa, who is the issuer of the credit card, and himself, which the agreement unambiguously sets forth.

13

Filing 17 at 4. Barber makes similar arguments based on the language of the U.S. Bank Defendants' arbitration agreements. Filing 22 at 2, 5–6.

There are two fundamental problems with Barber's argument.

### a.    Barber Did Not Allege Any Conspiracy or Concerted Action Claims

Barber's assertions in his brief notwithstanding, even liberally construed, his Complaint does not allege any "conspiracy," "concerted action," or "acting in tandem" claims. *See Topchian*, 760 F.3d at 849 (requiring liberal construction of *pro se* pleadings); *Stone*, 364 F.3d at 915 (same). Indeed, no amount of liberal construction reasonably suggests that defendants would have fair notice that Barber was asserting "conspiracy" claims sufficient for them to make a meaningful response. *Nelson*, 19 F.3d 1437, 1994 WL 87164, at *1 (explaining that "[t]he liberal construction afforded a pro se pleading is limited by reasonableness: defendants must be given fair notice of the claims so that they may make a meaningful response to the pleadings"). The words "conspiracy," "concerted action," and "acting in tandem," or even that defendants "worked together" are found nowhere in Barber's Complaint. *See generally* Filing 1.

The nearest Barber comes to any such allegation is in his conversion claim, which is the only claim against all three defendants. There, Barber alleges, "U.S. Bank, along with Credit One Bank, as well as Elan Financial Services, stole Mr. Barber's funds by reversing his payments due to insufficient funds where there were sufficient funds in Mr. Barber's account to make said payments." Filing 1 at 9 (¶ 79). However, he then alleges separate actions by each defendant perhaps to the same end of obtaining overdraft fees or returned payment fees but without any allegations that a reasonable person would understand to suggest that defendants "worked together" or "conspired" to achieve a joint purpose. *See W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 787 (8th Cir. 2017) (explaining that under Nebraska law, "'[a] civil conspiracy is a combination of two or more persons to accomplish by concerted action an

14

unlawful or oppressive object, or a lawful object by unlawful or oppressive means.'" (quoting *Dixon v. Reconciliation, Inc.*, 291 N.W.2d 230, 232 (Neb. 1980), in turn quoting *Peters v. Woodman Accident & Life Co.*, 104 N.W.2d 490, 496 (Neb. 1960)); *see also Liberty Ins. Corp. v. HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023) (explaining that a nonmoving party can only defeat summary judgment "if 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))); *Nelson*, 19 F.3d 1437, 1994 WL 87164, at \*1 (explaining that liberal construction is limited by reasonableness so *pro se* pleadings must give fair notice of a claim).

There are simply no "conspiracy" claims in Barber's Complaint that could possibly avoid arbitration.

### b.  If Barber Had Alleged Any Conspiracy or Concreted Action Claim, It Would Be Covered by the Arbitration Agreements

Even if Barber had alleged any "conspiracy" or "concerted action" claim, that claim would be covered by the broad arbitration agreements. The language of the arbitration clauses at issue is broad enough to encompass a wide variety of claims. *See JES Farms*, 116 F.4th at 736. Indeed, they "use a 'belt and suspenders' approach to emphasize the breadth of [the] particular provision[s]." *Id.* at 737. The Credit One arbitration clause states that it applies to "any controversies or disputes arising from or relating in any way to your Account," then specifies—belt and suspenders like—that it applies to "any transactions involving your Account," and "any interest, charges, or fees assessed on your Account." Filing 17 at 4; *cf. JES Farms*, 116 F.4th at 736 (observing that a reference to "any dispute" indicates a 'broad arbitration clause" that would encompass a wide variety of claims"). It then states, "Claims subject to arbitration include any controversies or disputes based on any theory of law," Filing 17 at 4, which is clearly broad enough to encompass a "conspiracy" or "concerted action" theory. The same is true of both the

U.S. Bank account arbitration clause and the Elan credit card account arbitration clause. Both state broadly that the agreement to arbitration includes "[c]laims related to or arising out of this account Agreement" and "[c]laims related to or arising out of any aspect of any relationship between us that is governed by this account Agreement, whether based in contract, tort, statute, regulation, or any other legal theory." Filing 21-2 at 19; Filing 21-3 at 6.

Simply labelling a claim "conspiracy" or "concerted action" does not exempt a claim from arbitration because what matters is the factual allegations on which the claim is based. *H&T Fair Hills*, 76 F.4th at 1100. Indeed, district courts in this Circuit have recognized that civil conspiracy claims are subject to arbitration where the factual allegations "touch on matters covered by the arbitration agreement" or "relate to" the underlying agreement. *See Ground Connection LLC v. Krinner Schraubfundamente GMBH*, No. 5:18CV00181-JM, 2019 WL 3504235, at *2 (E.D. Ark. Aug. 1, 2019) (finding that a civil conspiracy claim did "more than simply touch on matters covered by the arbitration agreement" where the factual underpinning of the conspiracy claim was based on the existence of the underlying contract); *Birts v. Vermillion*, No. 08-CV-4011, 2011 WL 13152677, at *5 (W.D. Ark. Mar. 14, 2011) (finding that a civil conspiracy claim "at the very least relate[d] to the Agreement" for the services to be provided), *order clarified*, No. 4:08-CV-04011, 2012 WL 12831303 (W.D. Ark. Jan. 13, 2012); *Easter v. Compucredit Corp.*, No. 08-CV-1041, 2009 WL 499384, at *6 (W.D. Ark. Feb. 27, 2009) (finding that "the Plaintiffs' civil conspiracy claim [arose] from the same set of operative facts . . . as the covered [contract] and thus, [wa]s within the scope of the Arbitration Provision"). The same is true in this case, where Barber's purported "conspiracy" or "concerted action" claim is premised on allegations about the defendants' actions under the account or card agreements. Finally, if any remaining doubts existed as to the arbitrability of any "conspiracy" or "concerted

action" claim—had any such claim been asserted—it would be resolved in favor of arbitration. *H&T Fair Hills*, 76 F.4th at 1100.

Thus, the Court concludes that Barber's claims are within the scope of the arbitration agreements and must be resolved by arbitration.

### 2. *Barber Did Not Allege a Basis for Joint Liability, and Joint Liability Would Not Bar Arbitration*

Finally, Barber argues that all defendants are "jointly liable" for the conduct alleged in the Complaint, so that "separating the Defendants by ordering that the parties go through Arbitration proceedings first would infringe upon Plaintiff's right to obtain a judgment against the Defendants jointly." Filing 17 at 4; Filing 22 at 6–7. This argument suffers from essentially the same fatal flaws as his "conspiracy" argument to prevent arbitration.

First, there is no basis for joint liability apparent from Barber's Complaint. Barber argues that the United States Supreme Court has held in *McDermott, Inc. v. AmClyde* that "[i]f two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." Filing 17 at 4 (purportedly quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–221 (1994)); Filing 22 at 6 (same). However, the language purportedly quoted from *McDermott* cannot actually be found in that case at the point cited or anywhere else. Instead, it can be found in *Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017) (citing *Restatement (Second) of Torts* § 875 (1977)).[6] Although Barber has sued all three defendants for the tort of conversion, joint liability only arises if the plaintiff suffered a single or indivisible injury. *See Restatement (Second) of Torts* § 875 (1979) ("Each of two or more persons whose tortious conduct is a legal cause of a single and

---

[6] In *Honeycutt*, the Court quoted *McDermott* for the following proposition: "A creature of tort law, joint and several liability 'applies when there has been a judgment against multiple defendants.'" 581 U.S. at 447 (quoting *McDermott, Inc.*, 511 U.S. at 220–221).

17

indivisible harm to the injured party is subject to liability to the injured party for the entire harm."); *Est. of Petersen v. Bitters*, 954 F.3d 1164, 1170 (8th Cir. 2020); *Lockard v. Missouri Pac. R. Co.*, 894 F.2d 299, 305 (8th Cir. 1990) ("The law is clear that where there is but one indivisible injury caused by the joint or concurrent acts of two tortfeasors, each tortfeasor is jointly and severally liable for the entire amount of damages." (citing *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1203 (8th Cir.1982), and *Restatement (Second) of Torts* § 433A (1965)).

Here, for essentially the same reasons that not even a liberal reading of Barber's Complaint reasonably suggests a "conspiracy" or "concerted action," not even a liberal reading of Barber's Complaint reasonably suggests that he suffered a single, indivisible injury from the actions of the three defendants. *See Liberty Ins. Corp.*, 87 F.4th at 888 (explaining that a nonmoving party can only defeat summary judgment "if 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Anderson*, 477 U.S. at 248 (1986))); *Nelson*, 19 F.3d 1437, 1994 WL 87164, at *1 (explaining that liberal construction is limited by reasonableness so *pro se* pleadings must give fair notice of a claim). Barber alleges separate acts of conversion by each defendant perhaps to the same end of obtaining overdraft fees or returned payment fees but without any allegations that a reasonable person would understand to suggest that the injury from the actions of the three defendants was indivisible. *See* Filing 1 at 9 (¶ 79). He then alleges distinct acts causing distinct harms by each defendant in turn. *See* Filing 1 at 9–10 (¶¶ 80–82). In his prayer for relief, Barber pleads specific, itemized actual damages allegedly caused by each defendant. Filing 1 at 10–11 (¶¶ 86–88). Even as to non-economic damages, Barber does not allege that he suffered indivisible emotional and other damages, where he expressly pleads that

he is entitled to different amounts of non-economic damages from each defendant. Filing 1 at 11 (¶ 89).

Finally, Barber has not cited—and the Court has not found—any decision of any federal court holding that the possibility of joint liability precludes arbitration of claims pursuant to separate arbitration agreements with separate defendants. As the U.S. Bank Defendants argue, "The cases cited by Plaintiff . . . had nothing to do with arbitration provisions." Filing 23 at 2 (citing Filing 22 at 6). As explained above, what determines whether claims are covered by arbitration agreements is instead whether the claims asserted "touch matters covered by the . . . Arbitration Agreements" in light of any limiting language, such as language requiring that the "dispute arise under or relate in any way to the" contract of which the arbitration provision is a part. *Anderson*, 47 F.4th at 718 (cleaned up). The claims asserted plainly touch on matters covered by the underlying agreements. *Id.*

Thus, despite Barber's "joint liability" argument, the Court concludes that Barber's claims are within the scope of the arbitration agreements and must be resolved by arbitration.

### D.  Stay or Dismissal

As noted above, Credit One's Motion sought only a stay of the action pending arbitration rather than dismissal. Filing 18 at 3. The Court points out that Credit One was the only defendant then seeking arbitration, so that a stay of the action as to the other defendants would have been appropriate if only the claims against Credit One were sent to arbitration. On the other hand, the U.S. Bank Defendants seek dismissal premised on an arbitration clause and only request a stay "in the alternative." Filing 20 at 1. Thus, where the Court will order all of Barber's claims against all defendants to arbitration under the respective arbitration agreements, the Court must decide whether to stay or dismiss this action.

The Eighth Circuit Court of Appeals has explained,

19

> While the Federal Arbitration Act "generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it[,] ... district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *[Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766,] 769–70 [(8th Cir. 2011)] (citations omitted).

*Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021). This is a case in which it is clear that the entire controversy between the parties will be resolved by arbitration. Thus, dismissal rather than a stay is the appropriate course. *Id.*

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED as follows:

1. the December 19, 2024, Motion to Compel Arbitration by Credit One Bank, N.A., (Credit One), Filing 13, is granted, and all of Barber's claims against Credit One shall be resolved by arbitration according to the parties' Agreement;

2. the January 2, 2025, Motion to Compel Arbitration by defendants U.S. Bank National Association (U.S. Bank) and U.S. Bank d/b/a Elan Financial Services (Elan), (collectively, U.S. Bank Defendants), Filing 19, is granted, and all of Barber's claims against U.S. Bank and Elan shall be resolved by arbitration according to the parties' respective Agreements; and

3. This case is dismissed in its entirety. The Clerk of Court shall close the case.

Dated this 4th day of February, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge

20